## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### EASTERN DIVISION

JANE DOE                                                                              PLAINTIFF

v.                                          No. 2:10CV00109 JLH

ANDREW T. GAY, individually, and
in his official capacity; and
the CITY OF MARIANNA, ARKANSAS                                      DEFENDANTS

### OPINION AND ORDER

The plaintiff, a minor filing under a pseudonym, brings this action against the City of
Marianna, Arkansas, and Andrew T. Gay, a former officer of the Marianna Police Department.  The
plaintiff alleges that Gay sexually assaulted her in violation of her rights under the Fourth and
Fourteenth Amendments, the Arkansas Constitution, and Arkansas tort law.  The plaintiff also alleges
that the City is liable for Gay's unconstitutional conduct because the City had an official custom of
failing to adequately and properly educate, train, supervise, monitor, evaluate, investigate, respond
to, and discipline officers *vis-a-vis* constitutional standards and violations thereof.  The plaintiff's
claims against the City are brought pursuant to 42 U.S.C. § 1983, the Arkansas Constitution, and
Arkansas tort law.  The City of Marianna has moved for summary judgment.  For the following
reasons, the City's motion is granted in part and denied in part.

### I.

For the purposes of this motion, it is undisputed that on the evening of August, 25, 2008, Gay
while in uniform picked up the plaintiff, who was then fourteen years of age, from her house in his
patrol car and sexually assaulted her shortly thereafter.  Specifically, Gay fondled and kissed her
breasts and placed his hand down her pants, touching her vagina.  Although the City had a policy
requiring officers to regularly report to dispatch their mileage after picking up a member of the

opposite sex, Gay failed to comply with this policy.[1]  Consequently, the police department was not aware that anything was amiss until the plaintiff's mother came to the department at approximately 10:00 p.m. and complained that Gay was riding around Marianna with her daughter.  Gay was ordered to return to the station.

The shift commander, Alvin Honeycutt, testified that the plaintiff's mother was adamant about speaking to the police chief.  Honeycutt also testified that he asked Gay why he was still on duty and what he had been doing with the plaintiff.  Gay's explanation appeared innocuous, and Honeycutt told Gay to write a report.  The next day, Chief Vincent Bell spoke with the plaintiff's mother and initiated an internal investigation.  Bell also placed Gay on administrative leave.  Based on interviews with the plaintiff and Gay, and allegations of sexual assault, Bell turned the investigation over to the Arkansas State Police.  However, Gay was not arrested that day.  At the conclusion of the state police investigation, on September 5, 2008, Gay was terminated.  Four days later, he was arrested pursuant to a warrant issued at the request of the state police.

At the time of the incident, Gay had only been an officer for thirty days.  Before that he had been employed by the police department as a dispatcher for about one year.  Chief Martin Wilson, who replaced Bell, testified that Gay did not have extensive training but that he had the proper training.  Wilson further testified that normal police training does not specifically cover the need for police officers to avoid sexual assault.

---

[1] Gay testified that he had never witnessed or heard of an officer being disciplined for failing to comply with the mileage reporting policy, and that he did not believe that he would be punished for failing to do so.

## II.

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

## III.

The plaintiff concedes that there is insufficient evidence to support a section 1983 claim against Marianna for improperly hiring Gay. Therefore, summary judgment will be granted on that claim. Instead, the plaintiff contends that there is evidence that the Marianna Police Department "maintained a custom or usage of failing to investigate, supervise, and discipline officers such that it was deliberately indifferent to Plaintiff's constitutional rights."

A.     **Failure to Investigate, Supervise, and Discipline**

It is well-settled that municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief[.]" *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 2035-36, 56 L. Ed. 2d 611 (1978). However, as the Eighth Circuit has explained,

> A governmental entity cannot be held vicariously liable for its agent's acts under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, a plaintiff must identify a governmental "policy or custom that caused the plaintiff's injury" to recover from a governmental entity under § 1983. *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (citations and quotations omitted). A governmental policy "involves a deliberate choice to follow a course of action . . . made from among various alternatives by an official who has the final authority to establish governmental policy." *Doe v. Special Sch. Dist.*, 901 F.2d 642, 645 (8th Cir. 1990) (quotations and citations omitted). A governmental custom involves "a pattern of 'persistent and widespread' . . . practices which bec[o]me so 'permanent and well settled' as to have the effect and force of law." *Id.* at 646 (quoting *Monell*, 436 U.S. at 691, 98 S. Ct. 2018).

*Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007).

The plaintiff appears to concede that there is no evidence of an official municipal or law enforcement policy directing or encouraging officers to engage in conduct which violates a person's constitutional rights. *See Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) ("[T]his Court does not use the terms 'policy' and 'custom' interchangeably when conducting a Monell analysis. Rather, a 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."). Instead, as noted above, the plaintiff contends that she has presented sufficient evidence to create a genuine issue of material fact as to whether the Marianna Police Department maintained a custom or usage of failing to investigate, supervise, and discipline officers.

The Eighth Circuit has articulated the elements of a failure to investigate and act claim in the context of a section 1983 action based on allegations of sexual misconduct. *Thelma D. By &*

*Through Delores A. v. Bd. of Educ. of City of the City of St. Louis*, 934 F.2d 929, 932 (8th Cir. 1991) ("Appellants assert that the Board had a custom of failing to receive, investigate and act upon complaints of sexual misconduct of its employees."). The court held that "to establish the existence of a governmental custom of failing to receive, investigate and act upon complaints of violations of constitutional rights, a plaintiff must prove:"

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) That [the] plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Thelma D.*, 934 F.2d at 932-33 (quoting *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 646 (8th Cir. 1990)); *see also Mettler*, 165 F.3d at 1204 (quoting *Ware v. Jackson Cnty.*, 150 F.3d 873, 880 (8th Cir. 1998)).

The plaintiff contends that she can establish a custom of constitutional violations based on twenty-two incidents "involving serious officer misconduct from 2005–2010, followed by a complete failure on the part of the City to provide an investigation and discipline for the officers involved[.]"

The first two incidents involve allegations that Officer Douglas Kennedy threatened to murder a citizen in the presence of another officer, Lieutenant Scott McCall. Kennedy was not terminated until after a civil suit was filed. McCall did not report the threat, and yet was not punished once the department learned about the threat. The plaintiff's third instance is similar. Specifically, a citizen submitted a complaint to the police department that McCall threatened to kill him. There is no evidence in McCall's file that this complaint was investigated or that he was disciplined. McCall resigned a few months after the complaint was made.

5

The fourth incident is based on Chief Wilson's testimony that he heard rumors that past Chief James Tucker was terminated because a drug dealer went to the Mayor and City Council to complain that Tucker was extorting money from him. Tucker was terminated, but the termination was not explained and there are no written records of any investigation.

The fifth incident is based on an order directing Officer Dwayne Whitfield that he was no longer allowed to have females in his city vehicle while on duty. There is no evidence of any investigation upon which the order was based.

The sixth incident also involved Whitfield. A female department employee filed a complaint stating that Whitfield "grabbed the right cheek of my ass and stated that he wanted to see if it was soft." The records reflect that the Mayor and Chief were immediately contacted. Another officer reported that he did not see "anyone touch anyone." Three days after the incident, Whitfield attempted to talk with the employee-victim. That day, Whitfield was ordered to have no contact with the employee-victim because of the allegations of sexual harassment. Whitfield resigned the next day.

The seventh incident is based on allegations by a dispatcher that Martin, while a corporal, reported that the dispatcher was unprofessional and performed poorly because she refused to sleep with him. Although police records refer to the allegations and discuss a heated meeting between Wilson, the dispatcher, and their supervisor, there is no evidence of any further investigation into the dispatcher's complaints or disciplinary action.

The eighth incident is based on her expert report stating that a certain Judy Padgett testified that Kevin Evans, who served as Chief, once pointed his pistol at another officer. The expert report indicates that there is no evidence that Evans was investigated or disciplined. Although the plaintiff cites Padgett's deposition testimony for the proposition that it is unclear whether Evans was the Chief

at the time of the incident, it does not appear that Padgett's deposition was attached as an exhibit to the plaintiff's response to the City's motion for summary judgment.

The ninth, tenth, and eleventh incidents are based on past Chief Vincent Bell's testimony that citizens complained to him that "sometimes an officer [] may go out and borrow some money from someone and never pay them back." Bell testified that he specifically recalled complaints about three officers, Carl McCree, Wilson, and Michael Thomas. Beyond Bell's testimony that he would tell the complainants to file a formal complaint or go to small claims court, there is no evidence that the police department investigated these complaints or disciplined the officers involved.

The twelfth incident is based on Bell's testimony that the department hired an officer, John Bogan, who was a convicted felon in violation of state law. Bell testified that the officer's background check did not reveal the felony because he was not fingerprinted by the agency that processed him when he was convicted. Thomas was terminated once his felony status became known.

The thirteenth incident is based on Bell's testimony that Bogan wrapped handcuffs around his fist and punched an inmate. Bell testified that other officers confirmed that Bogan punched the inmate. Bell testified that he attempted to terminate Bogan but was overruled by the Mayor and City Attorney.

The fourteenth incident is based on Bell's testimony that Wilson told him that he had an altercation with his girlfriend in which the Wilson stated that his girlfriend hit him. Bell testified that he could not quite remember whether Wilson stated that he hit his girlfriend back. However, Bell testified that his belief after the conversation was that Wilson had hit his girlfriend. Wilson testified in his deposition that he did not have any such physical altercation and that he never hit his girlfriend. Bell testified that he recommended that Wilson be terminated but that the Mayor told Bell that he

would talk with Wilson.  Bell testified that the Mayor never got back to him and that Wilson was not terminated.

The fifteenth incident is based on Gay's testimony that Wilson was at his girlfriend's house when he was supposed to be on duty.  Gay testified that her believed that Wilson was punished.  Gay also stated that he only heard of the incident through gossip and that he did not know if it was true.

The sixteenth incident is based on Bell's testimony that a dispatcher named Martin Volner threatened to shoot another officer.  During the investigation into the threat, the dispatcher resigned.

The seventeenth incident involved allegations that Officer Kevin Newsom forged another officers name on a blood alcohol test.  There is no evidence that this allegation was investigated.

The eighteenth incident is based on Bell's testimony that Newsom and another officer pulled a man from a ditch and extorted money from him for doing so.  There is no evidence that this incident was investigated, but both officers resigned.

The nineteenth incident is based on Wilson's testimony that he heard rumors that McCree owed money to drug dealers.  McCree testified that he is unaware that any investigation into these rumors ever occurred.

The twentieth and twenty-first incidents are based on Wilson's testimony that he heard that Officers Michael Thomas and Adrian Smith were involved in selling stolen guns.  Wilson testified that he informed then-Chief Bell of the rumor but that he does not know if the matter was investigated.

The twenty-second incident is based on Gay's testimony that he had heard a rumor that a reserve officer had sex with a woman in his patrol car.

The City contends that, based on this evidence, the plaintiff cannot establish that the City or its pertinent policymakers were deliberately indifferent to a continuing, widespread, and persistent pattern of unconstitutional misconduct by the police department's employees.  Specifically, the City

argues that most of the plaintiff's instances of alleged misconduct are irrelevant to establishing a widespread pattern or practice of sexual assault or notice to the City's policymakers because the conduct in those instances was not similar in nature to Gay's sexual assault on the plaintiff. The plaintiff responds that, under the City's position, the more wide-ranging the unconstitutional conduct of a department, the less likely the municipality will be held liable.

Under Eighth Circuit precedent, to establish municipal liability, the plaintiff must present evidence of a pattern of prior similar constitutional violations by the officer in question or by other officers. *See Baker v. McCoy*, 739 F.2d 381, 384-85 (8th Cir. 1984) (no section 1983 municipal liability for police beating where "no evidence was offered of a pattern of similar incidents in which suspects in police homicides were physically beaten by police officers while in custody at a police station."); *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (affirming summary judgment because, unlike other cases, where the "prior complaints of physical or sexual assault . . . were quite similar to the type of officer misconduct that caused the constitutional deprivation actually suffered by the plaintiffs . . . . In this case, however, there is no evidence that the city ever had received, or had been deliberately indifferent to, complaints of violence or sexual assault on the part of an officer prior to the time [the officer] raped [the victim]."); *Ricketts v. City of Columbia, Mo.*, 36 F.3d 775, 780 (8th Cir. 1994) ("The violent acts were not foreseeable to the police because no similar acts had been reported."); *Thelma D.*, 934 F.2d at 933 (considering five prior complaints of sexual abuse in determining that no custom of sexual abuse existed); *Jane Doe A*, 901 F.2d at 646 n.4 (evidence regarding sexual conduct towards adults not relevant in determining if school district is liable for physical and sexual abuses of minors); *see also Ware*, 150 F.3d at 881-82 (in rape case, relying on prior acts of sexual misconduct to establish a continuing, widespread, and persistent pattern of unconstitutional conduct); *Bell v. Fowler*, 99 F.3d 262, 270 (8th Cir. 1996) ("[W]e affirmed a § 1983

9

jury verdict against the city of North Little Rock for failing to investigate *prior* complaints that an officer had been committing acts of violence and sexual misconduct, where the failure to act resulted in a sexual assault on the plaintiff.") (citing *Parrish v. Luckie*, 963 F.2d 201 (8th Cir. 1992); *cf. Morris v. Crawford Cnty.*, 299 F.3d 919, 925 (8th Cir. 2002) (holding that the Supreme Court has implicitly rejected "the proposition that violent or abusive behavior of any kind indicates a strong potential for violent behavior against persons in custody[,]" in the context of municipal liability based on a hiring decision, and stating that, when looking at prior misconduct, "it is the nature of the prior complaints with which we are concerned.");[2] *Audio Odyssey, Ltd. v. Brenton First Nat. Bank*, 245 F.3d 721, 742 (8th Cir. 2001) ("[The plaintiff] cites no evidence of previous Fourth Amendment violations committed by Scott County officials that resemble the one committed by [the defendant officers], nor any evidence that the County had notice of such misconduct."), *vacated but then reinstated in full by* 286 F.3d 498 (8th Cir. 2002) (en banc).

Even those decisions cited extensively by the plaintiff involved prior unconstitutional acts that were similar to the constitutional violation alleged by the respective plaintiffs. *See Harris v. City of Pagedale*, 821 F.2d 499, 508 (8th Cir. 1987) (holding city liable where the "assault was similar to many other sexual violations committed by [the defendant officer] and by other City police officers"); *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234 (9th Cir. 2011) (plaintiff alleging excessive force pointed to repeated prior instances of excessive force which were not investigated); *Czajkowski*

---

[2] While discussing a Fifth Circuit opinion, the Eighth Circuit noted that, "although the officer's record revealed that he was aggressive and that he had been abusive during a previous traffic stop, it did not reveal that he had ever sexually assaulted, sexually harassed, falsely arrested, improperly searched or used excessive force. Courts have determined that such complaints must be closely aligned with a plaintiff's alleged injury, and absent that close nexus, there can be no municipal liability based on a single hiring decision." *Morris*, 299 F.3d at 924 (citing *Gros v. City of Grand Prairie*, 209 F.3d 431 (5th Cir. 2000)).

*v. City of Chicago, Ill.*, 810 F. Supp. 1428, 1439-40 (N.D. Ill. 1992) (relying on evidence of well known, serious problem of domestic violence against wives of police officers, and numerous prior instances of meritorious claims for excessive force and domestic violence).

Here, of the twenty-two incidents of misconduct by Marianna police officers upon which the plaintiff relies, five ostensibly were of a sexual nature. The fifth incident is an order directing Officer Whitfield not to drive females around in his car. Nothing about this incident indicates that Whitfield engaged in unconstitutional conduct or performed acts similar to sexual assault. The sixth incident involved a male officer grabbing a female employee's buttock, which can be fairly construed as sexual assault. *But see Hawkins v. Holloway*, 316 F.3d 777, 785 (8th Cir. 2003) ("Not every inappropriate or unwanted touching by a public official, even if accompanied by vulgar comments of a sexual nature, can amount to the 'brutal and inhumane abuse of official power' necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation.") (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc)). In that instance, the male officer attempted to talk with the female victim and was ordered not to contact her. He resigned the next day. The seventh incident involved allegations that one officer sexually harassed a dispatcher. Because this incident involved no violence or physical contact, it is doubtful that it can be said to be similar in nature to a sexual assault.

The fourteenth incident is based on Bell's testimony regarding a conversation he had with Officer Wilson about an incident with his girlfriend. Bell testified that he could not remember whether Wilson actually said that he had hit his girlfriend after being hit by her, but that his impression after the conversation was that Wilson had hit his girlfriend. To the extent Bell's testimony is offered as evidence that Wilson actually engaged in domestic violence, it is inadmissible hearsay and may not be considered by the Court at the summary judgment stage. *See Mays v. Rhodes*, 255 F.3d 644, 648

11

(8th Cir. 2001) ("[W]e do not stretch this favorable presumption [at the summary judgment stage] so far as to consider as evidence statements found only in inadmissible hearsay.").  Consequently, Wilson's testimony that he never hit his girlfriend remains unrebutted.  Finally, the twenty-second incident is based on Gay's testimony he had heard a story that a reserve officer had engaged in sex in a patrol car.  His testimony about this incident is not admissible to establish that the incident occurred.  *See Mays*, 255 F.3d at 648.  Furthermore, nothing about Gay's testimony indicates that the sexual encounter was non-consensual.  Therefore, even if Gay's testimony about the rumor was admissible, the incident itself is not similar to Gay's sexual assault on the plaintiff.

Thus, at best, the plaintiff has provided admissible evidence of one prior incident of sexual assault, which may or may not have amounted to a constitutional violation.  This single incident, as a matter of law, does not establish an unconstitutional custom of allowing police officers to engage in sexual assault.  *Mettler*, 165 F.3d at 1205 ("A single incident normally does not suffice to prove the existence of a municipal custom.") (citing *Okla. City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985)).  Indeed, in that instance, a supervisor immediately notified the mayor and police chief, and began an investigation into the allegations.  The officer who had allegedly assaulted the female employee was ordered not to contact her.  Within a few days of the incident, the officer resigned and thereby mooted the need for further disciplinary proceedings.  No reasonable jury could find that the police department's response to the sexual assault demonstrated deliberate indifference.  Even if the incident of sexual harassment was sufficiently similar in nature to Gay's sexual assault, only two prior incidents similar to Gay's sexual assault is insufficient to establish a policy or custom of condoning unconstitutional conduct.  *See Smith v. Watkins*, 159 F.3d 1137, 1138 (8th Cir. 1998) ("[T]wo specific complaints and various rumors about an officer were not sufficient to establish a policy or custom of condoning unconstitutional conduct.").

The plaintiff contends that the incidents that she identified suggest that there may have been other, undocumented cases of constitutional violations by Marianna police officers. As noted, the plaintiff has only provided admissible evidence of one prior instance of sexual assault and one prior instance of sexual harassment. Speculation as to whether there may have been other instances of sexual assault by Marianna officers will not defeat a properly supported motion for summary judgment. *See Richey v. City of Independence*, 540 F.3d 779, 782 (8th Cir. 2008) (a court is not to engage in speculation at the summary judgment stage); *see also Otey v. Marshall*, 121 F.3d 1150, 1156 (8th Cir. 1997) (no evidentiary support for allegations of prior instances of excessive force).

The plaintiff also relies on post-event evidence to establish that the City had an unconstitutional custom. *See Bordanaro v. McLeod*, 871 F.2d 1151, 1166 (1st Cir. 1989) ("[U]se of post-event evidence was expressly allowed by the Fifth Circuit in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985)."). Other district courts within the Eighth Circuit have expressed doubts about whether evidence of activity after the alleged constitutional violation can be used to establish municipal liability under section 1983. *See*, *e.g.*, *Jenkins v. Saint Louis Cnty.*, No. 4:10CV827, 2011 WL 5868310, at *12 (E.D. Mo. Nov. 22, 2011); *Youa Vang Lee v. Anderson*, No. 07-1205, 2009 WL 1287832, at *6 (D. Minn. May 6, 2009). Regardless, the plaintiff's post-event evidence here does not tend to establish that the City had an unconstitutional custom. The plaintiff contends that "[t]he investigation into Gay's misconduct began only because [the plaintiff's mother] appeared at the station and was irate that Gay had been 'riding around' with her daughter." However, it is undisputed that the plaintiff's mother came to the station while Gay was still out with the plaintiff and that her complaint was the first notice that any police officer had that Gay might be engaging in misconduct. Gay was immediately ordered to report to the station, was questioned by the lead officer on duty, and was told to write a report. The next day, the Chief of Police began an investigation and,

13

later that day, turned the investigation over to the state police.  Based on this evidence, the plaintiff's claims that "the only reason Gay was questioned further about the incident is because [the plaintiff's mother] was extremely aggressive in making a complaint" and that, without her complaint, "the investigation would have stopped after Gay created a false report" are pure speculation.  *See Richey*, 540 F.3d at 782.

Because the plaintiff has failed to satisfy the first two elements of her failure to investigate, supervise, and discipline claim, the City is entitled to summary judgment on that claim.

**B.    Failure to Train**

In her complaint, the plaintiff asserts a failure to train claim.  Although the City addresses this claim extensively in its brief supporting its motion for summary judgment, the plaintiff does not address this claim in her brief in response to the motion for summary judgment.  Therefore, the plaintiff's failure to train theory has been abandoned.  *Cf. Carraher v. Target Corp.*, 503 F.3d 714, 716 n.2 (8th Cir. 2007) (noting that a plaintiff can abandon a claim on appeal by failing to brief the issue).

Furthermore, the Eighth Circuit has held that "[i]n light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women." *Andrews*, 98 F.3d at 1077; *see also Parrish v. Fite*, 594 F.3d 993, 994 (8th Cir. 2010).  At the time of the sexual assault, Gay had only been an officer for one month and, consequently, had not completed all mandatory officer training.  As the plaintiff concedes, Wilson testified that Gay lacked extensive training but had proper training.  Nevertheless, the plaintiff points to evidence that Gay was not trained on the use of force, weapons, or pursuit procedures.  Gay testified that he was once ordered to draw his weapon, but did not know how to hold, aim, or holster it, or even how to turn the safety off.  Even if Gay's training relating to

14

the use of force and weapons was somehow deficient, this evidence does not demonstrate the close relationship necessary to conclude that the City's failure to train Gay properly caused him to sexually assault the plaintiff or even raises a question of fact as to causation. *Andrews*, 98 F.3d at 1077.

Therefore, the City is entitled to summary judgment on the plaintiff's claim that it failed to train Gay.

## C.     State Claims

The plaintiff argues that the City is liable for violations of rights secured to her by the Arkansas Constitution as well as for the torts of intentional infliction of emotional distress, outrage, assault, and battery.  The Arkansas Civil Rights Act of 1993 enables persons to seek relief for "the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution." Ark. Code Ann. § 16-123-105(a).  However, ACRA claims are resolved in accordance with those principles, standards, and authorities which apply to section 1983 claims. *See* Ark. Code Ann. § 16-123-105(c). In the plaintiff's complaint, the substantive provisions of her section 1983 cause of action against the City are nearly identical to those of her Arkansas constitutional cause of action against the City. Consequently, to the extent that the allegations underpinning the plaintiff's state constitutional claims are the same as those giving rise to her section 1983 claims, the City also is entitled to summary judgment on the plaintiff's state constitutional claims.

The City argues that Arkansas law immunizes it from tort liability.  Ark. Code Ann. § 21-9-301 states:

> (a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

(b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

*See also* Ark. Code Ann. § 19-10-305.  According to the Arkansas Supreme Court, "the immunity afforded by section 21-9-301 is an affirmative defense that must be specifically pled and proven in order to be considered[.]"  *Vent v. Johnson*, 2009 Ark. 92, 303 S.W.3d 46, 53 (2009).  Thus, it is incumbent upon the City to plead and prove that it is entitled to that immunity due to a lack of insurance.  *Id.*  The City has offered no evidence demonstrating that it does not carry liability insurance.  Neither does the City argue that it is entitled to summary judgment on the merits of the plaintiff's state-law tort claims.  On this record, summary judgment cannot be granted on the plaintiff's state-law tort claims against Gay and the City.

## CONCLUSION

For the foregoing reasons, the City of Marianna's motion for summary judgment is GRANTED IN PART and DENIED IN PART.  Document #28.  The plaintiff's claims against the City of Marianna pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act (to the extent that they are identical to her section 1983 claims) are dismissed.  Summary judgment is denied as to the plaintiff's claims against the City of Marianna based on state law.

IT IS SO ORDERED this 30th day of March, 2012.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE